IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

DRAKE RUBLE,
DOMINIC POWELL,

      Plaintiffs,

vs.                                          Case No. 3:15-cv-338

LAMOT INDUSTRIES, LLC,
RYAN LAMOT,

      Defendants.

_____/

## DEFENDANTS' CORRECTED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants LAMOT INDUSTRIES, LLC and RYAN LAMOT ("Defendants"), submit this Corrected Memorandum in Opposition to Plaintiffs', DRAKE RUBLE and DOMINIC POWELL ("Plaintiffs"), *Motion for Summary Judgment* [doc. 37](the "Motion").

### SUMMARY

Plaintiffs' Motion for Summary Judgment[1] should be denied for two specific reasons:

1. Plaintiffs failed to refute the genuine issues of material fact that exist;

2. Plaintiffs neglect to address Defendants' Second Affirmative Defense in their Answer & Affirmative Defenses[2] the recognized outside sales exemption to the FLSA.

---

[1] Doc. 37

**STATEMENT OF FACTS**

In support of their Motion, Plaintiffs provide only selectively chosen contract materials and sales reports with LaMot Industries, LLC, which clearly support Defendants' contention that Plaintiffs were independent contractors,[3] and omitting others that do not support their argument. In a halfhearted attempt to contradict these documents, Plaintiffs submit declarations containing outlandish, otherwise unsubstantiated and largely conclusory allegations, mostly lacking in proper foundation.[4]

Contradictory to the allegations found in Plaintiffs' declarations, Defendants' business model operated almost identically to the business model of Louisiana Cleaning Systems, Inc., an independent distributer of Kirby Products in Louisiana.[5] Attached to the Declaration of Charles Nugent is the administrative ruling of the Worker's Compensation Office of the State of Louisiana.[6] The District Court found, based upon the findings of fact and legal analysis of the Louisiana administrative ruling, that a claimant in the same position as Plaintiffs in this case would not satisfy the broad definition of "employee" as defined by the FLSA. *French v. Louisiana Cleaning Sys., Inc.*, 2016 WL 3275302 (E.D. La. June 15, 2016)("The Court doubts that French could satisfy even the broad definition of

---

[2] Doc. 8 pg. 9
[3] Doc. 37-1; Doc. 37-2
[4] Doc. 37-3; Doc. 37-4
[5] *Exhibit A*, Declaration of Charles Nugent, filed in the District Court of the Eastern District of Louisiana in *French v. Louisiana Cleaning Sys., Inc.*, 2016 WL 3275302 (E.D. La. June 15, 2016).
[6] *Exhibit A*, pg 15

employee used in the FLSA… Without "employee" status French has no claim for overtime and minimum wage payments.").[7]

Defendants refute each and every outlandish allegation made in Plaintiffs' sworn declarations related to methods of control.[8] Of note, Plaintiff, Drake Ruble alleges that Defendants forced him to live in a specific home as a condition of his employment[9] and that Defendants used GPS tracking devices to monitor Plaintiffs' every move.[10]

## ADMISSIBILITY THRESHOLD OF DECLARANTS' PROFFER DOUBTFUL

For facts to be accepted as undisputed for summary judgment, Rule 56(c)2), Fed R. Civ. P. requires that the proffer of facts show that they can be presented in a form admissible in evidence.  Rule 56(c)(4) further provides that a declaration used to support such a motion must be made on personal knowledge, set forth facts that would be admissible in evidence and that the declarant is competent to testify on the matters stated.  The declarations of the two plaintiffs so widely depart from these standards that one seriously wonders if they can satisfy the standard of Rule

---

[7] Christopher French was an "independent Dealer/Kirby vacuum salesman for two weeks in November-December 2014." *French v. Louisiana Cleaning Sys., Inc.*, 2016 WL 3275302 (E.D. La. June 15, 2016). The Defendant in *French*, Louisiana Cleaning Systems, Inc., is an independent distributor of Kirby products similar to LaMot Industries, LLC.
[8] *Exhibit B*, Declaration of Alisha LaMot.
[9] Such an allegation alludes to an employment relationship like that of an itinerant farm laborer; Defendants vehemently refute any such allegation.
[10] Doc. 37-3 ¶ 28

56 (h) that such a declaration must be submitted in good faith. If so, then the standards of good faith may have slipped.

As to the declaration provided by Drake Ruble[11] Defendants challenge for lack of substantiation and personal knowledge:

1. Mr. Ruble's allegation that Defendants' vehicles had GPS tracking[12]
2. Mr. Ruble's allegations that he had funds deducted from his pay[13]
3. Mr. Ruble's allegations that LaMot controlled advertising and promotion of products[14]
4. Mr. Ruble's allegations that LaMot set all pricing minimums[15]
5. Mr. Ruble's allegations that LaMot had a strict dress code[16]
6. Mr. Ruble's allegations that LaMot controlled any independent dealers' schedule or location of activity[17]
7. Mr. Ruble's allegations that LaMot required all independent dealers to sign a non-compete[18]

As to the declaration provided by Dominic Powell[19] Defendants challenge for lack of substantiation and personal knowledge:

1. Mr. Powell's allegation that Defendants' vehicles had GPS tracking[20]
2. Mr. Powell's allegations that he had funds deducted from his pay[21]
3. Mr. Powell's allegations that LaMot controlled advertising and promotion of products[22]
4. Mr. Powell's allegations that LaMot set all pricing minimums[23]

---

[11] Doc. 37-3
[12] Doc. 37-3 ¶ 14
[13] Doc. 37-3 ¶ 16, 17, 19
[14] Doc. 37-3 ¶ 32
[15] Doc. 37-3 ¶ 21
[16] Doc. 37-3 ¶ 15
[17] Doc. 37-3 ¶ 16, 18-19, 22, 28, 29, 31, 33
[18] Doc. 37-3 ¶ 26
[19] Doc. 37-4
[20] Doc. 37-4 ¶ 13
[21] Doc. 37-4 ¶ 15, 16, 18
[22] Doc. 37-4 ¶ 30

5. Mr. Powell's allegations that LaMot had a strict dress code[24]
6. Mr. Powell's allegations that LaMot controlled any independent dealers' schedule or location of activity[25]
7. Mr. Powell's allegations that LaMot required all independent dealers to sign a non-compete[26]

## GENUINE ISSUES OF MATERIAL FACT

The economic realities test[27] contained in Plaintiffs' Motion is based upon erroneous and contested facts found solely in their own declarations.[28] In fact, Plaintiffs acknowledge in their Motion that the documents they signed could be relied upon to argue their independent contractor status.[29] Interestingly, the documents Plaintiffs attach to their Motion are not complete;[30] while Plaintiffs attached several of the agreements signed between the parties and produced by Defendants in discovery,[31] Plaintiffs neglected to attach the agreements related to Plaintiffs' voluntary use of Defendants' vehicles.[32] Defendants are forced to assume that the removal of such agreements from the "Employment Documentation for Plaintiffs,"[33] attached to Plaintiffs' Motion, is due to the fact

---

[23] Doc. 37-4 ¶ 20
[24] Doc. 37-4 ¶ 14
[25] Doc. 37-4 ¶ 15, 17-18, 21, 27-29, 31
[26] Doc. 37-4 ¶ 25
[27] Doc. 37-0 pg. 12-21
[28] Doc. 37-3; Doc. 37-4
[29] "[I]t is anticipated that Defendants will rely on a series of documents which were signed by Plaintiffs to argue that they were independent contractors." Doc. 37-0 pg. 9 (citing Doc. 37-1)
[30] Doc. 37-1
[31] Doc. 14B
[32] *Exhibit C*, Plaintiffs' signed Van Participation Agreements
[33] Doc. 37-0 pg. 9 FN 10

that the agreements contradict the majority of Plaintiffs' allegations related to the economic realities analysis.[34]

From the outset of Plaintiffs' Motion, contradictions are evident; Plaintiffs have previously acknowledged that Defendants are not in the business of marketing any products despite their allegations in their Motion.[35] As clearly stated in Plaintiffs' own exhibit[36] Defendants are "in the business of selling Kirby Systems at wholesale to independent Kirby dealers for resale to consumer end-users…"

In Plaintiffs' same exhibit, immediately following the statement of Defendants' business model,[37] the Plaintiffs agree to act as independent contractors, acknowledge that they "may incur a loss" in their activities, are responsible to provide their own equipment other than Kirby systems and control how much or how little they wish to work.[38] In fact, Defendants contend, and have always contended, that Plaintiffs were treated as independent contractors and were properly classified based upon their operative facts.[39] All documentary evidence provided by either party, with the exception of Plaintiffs' sworn declarations, support Defendants' contention that Defendants consigned vacuums to Plaintiffs as independent contractor/dealers.

---

[34] Doc. 37-0 pg. 12-21
[35] Doc. 37-3 ¶ 5; Doc. 37-4 ¶ 7; Doc. 37-1 pg. 2 preamble, pg. 15 preamble
[36] Doc. 37-1 pg. 2 preamble, pg. 15 preamble
[37] Doc. 37-1 pg. 2 preamble; pg. 15 preamble
[38] Doc. 37-1 pg. 2 ¶ 6-7; pg. 15 ¶ 6-7.
[39] *Exhibit A*

In fact, Plaintiffs rely solely upon their own declarations[40] to refute contractual documents they executed that clearly support a showing of their independent contractor status.[41] "[A] summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences." *Boyer v. Bd. of Cty. Comm'rs of Cty. of Johnson Cty.*, 922 F. Supp. 476, 484 (D. Kan. 1996)(citing *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986). As the Court well knows, "[o]n summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Because Defendants submit the declaration of another employee,[42] whose declaration comports with the documentary evidence of record,[43] Plaintiffs' Motion should be denied.

## LEGAL ANALYSIS IN CLOSELY SIMILAR CASE

Usually, in cases before the court, attorneys must rely solely upon cases with tangentially similar facts. In this case, we have the benefit of a sister Court's ruling just last month related to the nearly identical substantive allegations with analogous parties, in the same dealership structure—and even the same product

---

[40] Doc. 37-1; Doc. 37-2
[41] Doc. 37-3; Doc. 37-4
[42] *Exhibit B*
[43] Doc. 37-1; Doc. 37-2

line. *French,* FN 4 ("The Court doubts that French could satisfy even the broad definition of employee used in the FLSA… Without "employee" status French has no claim for overtime and minimum wage payments."). The court in *French* reviewed the findings of fact regarding another Kirby distributor's business model and found that independent Kirby dealers do not fit the definition of an employee under the FLSA. *Id*.

In *French*, the Court referred to an August 2015 decision of a Louisiana Office of Workers' Compensation administrative judge which determined that an independent dealer selling Kirby products was not an employee under Louisiana law. *Id*, FN. 4. Noting that the decision was not binding, the Court indicated the opinion was "well-reasoned, thorough, and persuasive." *Id*.

The determination of employment in Louisiana requires consideration of the following factors: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking; and (5) specific time or duration is agreed upon and not subject to termination at

the will of either side without liability for breach. *Steinfelds v. Villarubia*, 53 So.3d 1275 (La.App. 4 Cir. 12/15/10).

The administrative judge, when applying the above analysis, made the following findings: The independent dealer "was not an employee"; the independent dealer "participated in the van program but was not required to do so"; the independent dealer "attended the daily sales meetings so that he could be assigned to a van. However, he had the option to go it alone, but he chose not to"; the independent dealer "was never paid a salary"; the independent dealer's principal "exercised no control over the means by which this result was accomplished although he did make suggestions to make Bourgeois (the Plaintiff) more successful."[44]

It was upon the above findings of fact that the United States District Court of the Eastern District of Louisiana determined that, when applied to the definition of employee in the FLSA, a claimant in the exact same position as both Plaintiffs in this case would not satisfy the definition. *French*, FN 4.

Defendants in this case have an almost identical business model as the defendant in *French*.[45]

Defendants sell Kirby products at wholesale to independent contractors known as "independent dealers."[46] Prior to purchasing the Kirby products,

---

[44] *Exhibit A*, pg. 20-21
[45] *Exhibit A; Exhibit B; Exhibit C*; Doc. 37-1

independent dealers may check out Kirby products on consignment from Defendants and make door-to-door sales demonstrations with the consigned goods.[47] Independent dealers were responsible for all costs associated with the sale of Kirby products.[48] Independent dealers may work as much or as little as they wish.[49] Defendants exhibited no operational control over the location or manner of independent dealers' door-to-door sales operations.[50] Independent dealers could choose to participate in Defendants' van program but were never required to do so.[51] Notably, the Van Program Agreements specifically state "LaMot Industries, LLC exercises no control over your participation in the van program including the van to be ridden in by Dealer or what areas the van will be operating, said decisions to be made by the undersigned voluntary participant…".[52] Plaintiffs could have used their own vehicles to engage in door-to-door sales and could have gone alone to make such sales.

Defendants affirmatively deny that they ever deducted amounts owed to any independent dealers as punishment or as a way to control behavior.[53] Independent

---

[46] *Exhibit B* ¶ 3
[47] *Exhibit B* ¶ 4; Doc. 37-1 pg. 2 ¶ 2, pg. 15 ¶ 2
[48] *Exhibit B* ¶ 7; Doc. 37-1 pg. 2 ¶ 7, pg. 15 ¶ 7
[49] *Exhibit B* ¶ 12; Doc. 37-1 pg. 2 ¶ 6, pg. 15 ¶ 6
[50] *Exhibit B* ¶ 18, 22-23; Doc. 37-1 pg. 2 ¶ 6, pg. 6, pg. 15 ¶ 6, pg. 20
[51] *Exhibit C*
[52] *Exhibit C*
[53] *Exhibit B* ¶ 9-11, 13

dealers made money as a direct result of their making sales, any costs incurred as a result of their sales methods were born exclusively by them.[54]

When comparing the above description of Defendants' business model to the description of Louisiana Cleaning Systems, Inc.'s business model, described in the Declaration of Charles Nugent,[55] it becomes evident that the District Court's ruling in *French* is based upon the same facts readily apparent in the present case.

While not directly controlling, the District Court's analysis in *French* should serve as persuasive authority closely analyzed on remarkably similar facts, and provides additional support for a denial of Plaintiffs' Motion.

## OUTSIDE SALES EXEMPTION

The Court in *French* did not base its dismissal of an independent Kirby dealer's FLSA complaint solely upon the definition of employee under the FLSA; the Court also found that the claimant's alleged work activity satisfied an enumerated exemption to the minimum wage and overtime requirements of the FLSA. *French*, at *2 ("It is clear from French's allegations that the overwhelming majority of his activities during his two-week affiliation with LCS places him squarely within the outside salesman exemption identified in 29 U.S.C. § 213(a)(1)").

---

[54] *Exhibit B* ¶ 7, 24; Doc. 37-1 pg. 2 ¶ 7, pg. 15 ¶ 7
[55] *Exhibit A pg. 1 - 11*

It has been recognized that the "outside salesmen" exemption of 29 U.S.C.A. § 213(a)(1) derives from the incompatibility of the minimum wage and overtime requirements of the FLSA with the individual character of the work of such salesmen.

The Secretary of Labor defines an "outside salesperson" as an employee (1) whose "primary duty" consists of making sales or obtaining orders or contracts for services for which a consideration will be paid by the client or customer and (2) who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty. *Schmidt v. Eagle Waste & Recycling, Inc.*, 598 F. Supp. 2d 928, 935 (W.D. Wis. 2009), aff'd, 599 F.3d 626 (7th Cir. 2010)(citing, 29 C.F.R. § 541.500). For the outside salesperson exemption to apply, there must be a showing that plaintiff was engaged primarily in sales that occurred away from the employer's place of business. *Id*.

Plaintiffs admit that their primary duty was as sales representatives.[56] Plaintiffs also admit that their job consisted primarily of going "door-to-door" making such sales.[57]

Plaintiffs do not make factual allegations or allege any undisputed facts which would circumvent the exemption in their case. Because Plaintiffs fail to even attempt to address Defendants' pled affirmative defenses, Plaintiffs' Motion

---

[56] Doc. 37-0 pg. 13; Doc. 37-3 ¶ 6-7; Doc. 37-4 ¶6
[57] Doc. 37-0 pg. 13; Doc. 37-3 ¶ 6-7; Doc. 37-4 ¶6

should be denied. *See* Knight Energy Servs., Inc. v. Amoco Oil Co., 660 So.2d 786, 788 (Fla. 4th DCA 1995) ("Before a plaintiff is entitled to a summary judgment, the plaintiff must either factually refute the alleged affirmative defenses or establish that they are legally insufficient to defeat summary judgment.").

Based upon Plaintiffs' own sworn declarations, the only factual allegations to which both parties agree are that, regardless of employment status, Plaintiffs were engaged in exempt activity under the FLSA.

## CONCLUSION

Because Plaintiffs fail to prove that no genuine issues of material fact exist, and because Plaintiffs allege facts sufficient to exempt them from the overtime and minimum wage requirements of the FLSA, Plaintiffs' Motion should be denied.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using 14 point Times New Roman and that it contains 2,909 words, inclusive of headings.

Respectfully submitted,

/s/ *George R. Mead, II*
GEORGE R. MEAD, II
Florida Bar No. 096490
MOORE, HILL & WESTMORELAND
350 W. Cedar Street, Suite 100
Post Office Box 13290
Pensacola, FL 32591-3290
(850) 434-3541

                                        (850) 435-7899 (fax)
                                        emead@mhw-law.com
                                        hmalone@mhw-law.com
                                        *Counsel for Defendant, Etheridge*
                                        *Construction, Inc. and Brenton Etheridge*

**CERTIFICATE OF SERVICE**

      On July 26, 2016, I electronically filed this document through the ECF system, which will send a notice of electronic filing to Jeremiah Talbot, Esquire, and all other parties of record who have consented to electronic service and appeared in this matter.

                                        ***/s/ George R. Mead, II***
                                        GEORGE R. MEAD, II